**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
FEDERAL DEPOSIT INSURANCE                               :
CORPORATION as Receiver for Broadway                    :
Bank *ex rel.* LEE MONCHO,                              :
:
                  Plaintiff,       :       MEMORANDUM DECISION
     -against-                                        :          AND ORDER
:
FIFTH THIRD BANK, N.A., as                              :       14 Civ. 6003 (GBD)
successor-in-interest to MB FINANCIAL                   :
BANK, N.A.,                                             :
:
                 Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GEORGE B. DANIELS, District Judge:

      Plaintiff-Relator Lee Moncho filed this *qui tam* action against Defendant Fifth Third Bank

on behalf of the Federal Deposit Insurance Corporation ("FDIC"), asserting three causes of action

under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.* Moncho alleges that Defendant's

successor-in-interest, MB Financial Bank ("MB Financial"), made false claims for payment to the

FDIC under a 2010 shared-loss agreement. On March 11, 2022, Defendant moved to dismiss. (ECF

No. 66.) Defendant's motion to dismiss is GRANTED.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      Broadway Bank ("Broadway") was a Chicago-based, FDIC-insured bank in the business of

providing construction and other loans secured by real property. (Second Amended Complaint

("SAC"), ECF No. 65 ¶¶ 43–44.) After a series of bad loans left the bank heavily undercapitalized,

the Illinois Department of Financial and Professional Regulation closed Broadway in April 2010 and

appointed the FDIC as receiver. (*Id.* ¶¶ 45–49.) In anticipation of placing the bank into receivership,

the FDIC began soliciting bids on Broadway's loans in March 2010. (*Id.* ¶ 50.) Ultimately, the

FDIC accepted MB Financial's proposal, which included a 19.6% discount for Broadway assets.

(*Id.* ¶ 51.)  Moncho alleges that the FDIC entered into a shared-loss agreement ("SLA") with MB Financial pursuant to which the FDIC agreed to assume 80% of future losses MB Financial incurred on Broadway's loans and MB Financial agreed to pay 80% of recoveries.  (*Id.* ¶¶ 52, 54, 58.)

Moncho filed his initial complaint under seal on August 1, 2014, alleging that MB Financial had engaged in a "scheme to defraud the FDIC" by making false claims for payment on several Broadway loans.[1]  (*See generally* ECF No. 1.)  After investigating his claims, the Government declined intervention.  (ECF No. 23.)  In his operative Second Amended Complaint, Moncho claims that MB Financial submitted claims for payment for loans that MB Financial knew were (a) "paid in full;" (b) previously "sold to third parties;" (c) made by other banks or financial institutions; (d) unsecured real estate investment loans; (e) lines of credit that were not drawn down; (f) participations misrepresented as direct loans; and (g) loans that were included by the filing of false and misleading reports.  (SAC ¶ 14.)  In total, Moncho alleges that MB Financial submitted $400 million in false claims under the SLA.  (*Id.* ¶ 27.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).

---

[1] After the filing of the initial complaint, MB Financial was acquired by Defendant Fifth Third Bank. (SAC ¶ 38.)

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.* In deciding a 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III.   THE FCA'S PUBLIC DISCLOSURE PROVISION REQUIRES DISMISSAL

The False Claims Act imposes liability on any person who knowingly presents a false or fraudulent claim for payment or approval to an officer or employee of the United States. *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015) (citation omitted). The FCA "may be enforced not just through litigation brought by the Government itself, but also through civil *qui tam* actions that are filed by private parties, called relators, in the name of the Government." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citing *Kellogg Brown*, 575 U.S. at 653).

The FCA imposes several restrictions on *qui tam* actions. Relevant here, claims under the FCA are subject to a public disclosure bar that prohibits a relator from bringing a claim for conduct that has already been made public. 31 U.S.C. § 3730(e)(4)(A). The public disclosure bar is intended to discourage "opportunistic plaintiffs who have no significant information to contribute of their own." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294 (2010); *see also U.S. ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 319 (2d Cir. 1992) (discussing "potential for parasitic lawsuits by those who learn of the fraud through public channels and seek remuneration although they contributed nothing to [its] exposure."). Pursuant to the bar, a *qui tam* action must be dismissed "if substantially the same allegations or transactions as alleged in the action

... were publicly disclosed ... [unless] the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Courts analyzing the applicability of the public disclosure bar thus apply a two-step approach. At the first step, courts look to whether the substance of a relator's claim had been disclosed prior to the filing of his suit. *See e.g., U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 43 F.Supp.3d 332, 346 (S.D.N.Y. 2014). At the second step, courts look to whether, if such disclosures had been made, the relator can be considered an "original source." *Id.* If so, the relator may proceed with his complaint.

Defendant argues that the public disclosure rule bars Moncho's claims because "substantially the same allegations or transactions" have already been publicly disclosed and Moncho fails to qualify for the original source exception because he lacks "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("MSJ"), ECF No. 67, at 20.) This Court agrees.

## A.    Prior Public Disclosures of Moncho's Claims

Public disclosures may be found "in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party"; "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation"; or "from the news media." 31 U.S.C. § 3730(e)(4)(A). The Supreme Court has applied a broad view of the public disclosure bar. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011) ("This broad ordinary meaning of 'report' is consistent with the generally broad scope of the FCA's public disclosure bar.... The other sources of public disclosure in § 3730(e)(4)(A), especially 'news media,' suggest that the public disclosure bar provides a broa[d] sweep ... The phrase 'allegations or transactions' in § 3730(e)(4)(A) additionally suggests a wide-reaching public disclosure bar.") (citation omitted). Following suit, the Second Circuit requires only that earlier disclosures have been

"sufficient to set the government squarely upon the trail of the alleged fraud" for the bar to apply. *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 298 (S.D.N.Y. 2013).

A review of the SAC leaves little doubt that the documents and information forming the basis of this action were publicly disclosed. As explained in the SAC, Moncho's "investigation" began after MB Financial foreclosed on a loan for certain real property that Moncho owned in Manhattan in July 2010. (SAC ¶ 31.) In the fall of 2010, an aggrieved Moncho came to learn of lawsuits regarding other Broadway loans, including one action involving 22 Renwick, the principal of another Broadway borrower, (*id.* ¶ 32), and a lawsuit filed by the FDIC against Broadway Bank directors, (*id.* ¶ 36). The legal documents made public in these lawsuits identified several additional Broadway loans, and Moncho began investigating those loans by "tracking down and speaking with various persons with first hand or other knowledge of these transactions." (*Id.*) Moncho also used the public Automated City Register Information System ("ACRIS") to identify other loans and borrowers, whom he also later interviewed. (*Id.* ¶ 33.) As an initial matter, there is no dispute that documents filed in other litigation and information pulled from a public database qualify as public disclosures.

Moncho's complaint then goes on to provide certain "representative examples" of MB Financial's alleged misconduct. As set forth in Defendant's motion, the disputes and relevant facts surrounding each of Moncho's example transactions were all either covered extensively by the media or disclosed in prior litigation. (*Compare* SAC ¶¶ 64–71 (describing Avadamma dispute) *with* Def.'s App'x. 823 and 825 (news media on same) and App'x. 827 (documents from litigation on same); *compare* SAC ¶¶ 72–92 (discussing 261 East 78 Street loan) *with* Def.'s App'x. 830 (media publication of property disclosure statement) and Def.'s App'x. 888; *compare* SAC ¶¶ 93–105 (56 Walker LLC) with Def.'s App'x 404, 960, 962 (media coverage of same) and Def.'s App'x. 968–9 (documents from litigation on same). In fact, as acknowledged in the SAC, in 2012—two years

before Moncho initiated the instant action—the FDIC itself litigated against Broadway seeking to recover losses from a few of the loans Moncho identifies as "representative examples," (SAC ¶ 36), compelling the conclusion that sufficient facts existed in the public domain to set the Government "upon the trail of the alleged fraud" as early as 2012. *Ping Chen*, 966 F.Supp.2d at 298.

Further, the primary documents on which Moncho relies in his complaint have been publicly disclosed. As Defendant notes, the shared-loss agreement and the purchase and assumption agreement were both publicly disclosed by the FDIC when it published them on its website. (Def.'s App'x. 125.) In other places, the SAC cites specifically to public documents, (*see e.g.,* SAC ¶¶ 10–11), or identifies information as having been derived from litigation, (*e.g.*, *id.* ¶ 36). In one glaring example, Moncho copies an entire paragraph from a filing in a 2008 case brought by the SEC. (*Compare id.* ¶ 126 *with* Def.'s App'x. 460, at 40 n.34.) Finally, certain of the news media and public litigation identified by Defendant embrace the SAC's chief complaint that some loans were improperly included in the SLA. (*See e.g.*, Def.'s App'x. 1369, 1372, 962, 460, 823, 825.)

In response to Defendant's arguments, Moncho's opposition, like his SAC, makes the conclusory claim that "essential documents to untangling" the alleged fraud "remain non-public to this day." (Pl.'s Opp. to Def.'s MSJ, ECF No. 74, at 23.) Neither his opposition nor the SAC identify those documents, however, or specify the information Moncho claims to have learned from them. At oral argument, Moncho said he has "confidential unredacted spreadsheets" showing the collateral values of certain MB Financial loans that MB Financial included in the SLA. (Transcript of Aug. 10, 2022 Oral Argument ("Tr.") 42:3–11.) Moncho represented that the spreadsheets were revealed to him in the course of discovery in different litigation. (*Id.* 66:17.) These documents cannot save Moncho's claim for two reasons. First, the Second Circuit, along with a majority of other circuits, has held that the disclosure of discovery material to a party is a public disclosure under the FCA,

regardless of whether such discovery has been filed with the court. *See U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993) (collecting cases and noting that "[i]nformation gleaned in litigation" is publicly disclosed within the meaning of the FCA). Second, even if the spreadsheets do not constitute public disclosures, much of Moncho's SAC nevertheless relies on a significant quantity of material that has already been publicly disclosed. *See supra*. The Second Circuit does not require that a relator base *all* his allegations on previously disclosed public information for the bar to come into effect. *See e.g., U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 437 Fed. App'x. 13, 17 (2d Cir. 2011) ("We have previously interpreted this phrase to mean that the public disclosure bar applies to claims "based in *any part* upon publicly disclosed allegations or transactions."); *Kreindler*, 985 F.2d at 1158 ("[T]he statute applies to a "qui tam action ... based in *any part* upon publicly disclosed allegations or transactions.") (emphasis added).

Moncho also argues that none of the disclosures Defendant cites "could have possibly set the government upon the trail of the alleged fraud" because "they did not identify or explain the dozens of false statement[s] and misrepresentations" at issue in this case. (Opp. at 23 n. 7.)   As noted by other courts, there are always additional nuances or details of a scheme that a relator may set forth, but that does not make his claims unique. *United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 43 (E.D.N.Y. 2021).   Such detail and factual distinctions are "irrelevant unless the alleged disclosures fail to include an essential element of the fraud and a relator's information fills that gap." *Id*.  Nor is the absence of any explicit allegation of wrongdoing dispositive, as Moncho claims, (Opp. at 23–24), because "[t]he bar is triggered if material elements of the fraud have been publicly disclosed, and does not require that the alleged fraud, itself, have been disclosed." *United States ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 262 (S.D.N.Y. 2020); *see also Monaghan v. Henry Phipps Plaza, W., Inc.*, 531 F. App'x 127, 130 (2d Cir. 2013).

In sum, the information provided in several public disclosures, including the FDIC's own lawsuit against Broadway, were sufficient to put the government on notice to investigate the alleged fraud before Moncho filed this action.

**B.      Moncho as an "Original Source"**

Even where prior disclosures trigger the public disclosure bar, a claim can nonetheless avoid dismissal if the relator qualifies as an original source. 31 U.S.C. § 3730(e)(4)(A). Under the FCA, an individual has two alternative avenues to meet the definition of "original source." First, an individual who, "prior to a public disclosure, has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based" is an original source. 31 U.S.C. § 3730(e)(4)(B)(i). The SAC alleges that Moncho shared his information with a "federal investigative agency for a period of approximately two years prior to the filing under seal of the initial complaint in this action." (SAC ¶ 3.) Several of the public disclosures in this action, however, were made at least two and three years prior to the filing of the complaint, such as the October 2010 lawsuit which Moncho credits as kickstarting his investigation, (*id.* ¶ 32), and the FDIC's own litigation against Broadway Bank, (*id.* ¶ 36). Because these disclosures pre-date Moncho's provision of information to the government, Moncho does not meet this definition.

Under the second avenue, an individual qualifies as an original source if he possesses "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," and he has "voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). Because Moncho acquired his information from various third-parties, he does not possess knowledge "independent" of information that already existed in the public domain. The SAC admits, for example, that Moncho conducted his investigation relying primarily on documents disclosed in public litigation, information from the

public ACRIS database, and knowledge obtained by speaking to individuals involved in other of the loans of which the SAC complains. Nor is there any question that Moncho was not the original source of the "unredacted spreadsheets" from his prior litigation, as the documents belonged to, and were provided by, MB Financial. *See Kreindler*, 985 F.2d at 1159 (a relator who reviews information disclosed by others in litigation is not an original source"). Finally, under settled law, the fact that Moncho "conducted some collateral research and investigations" and "paired the results of that research with [his] background information, does not qualify [him] as an original source. *Vierczhalek v. MedImmune Inc.*, 80 Fed. App'x. 522, 525–526 (2d Cir. 2020) (citing *Kreindler*, 985 F.2d at 1159). Thus, Moncho's SAC does not adequately allege that he is an original source for purposes of avoiding the FCA's public disclosure bar.

## IV.   CONCLUSION

Because Moncho's *qui tam* action is based upon the public disclosure of allegations or transactions within the meaning of § 3730(e)(4)(A), and because Moncho is not an "original source" of the pertinent information within the meaning of § 3730(e)(4)(A) and (B), this case must be dismissed under the FCA's public disclosure provision.   Defendant's motion to dismiss, (ECF No. 66), is GRANTED.

The Clerk of Court is directed to close the motion and to close this action accordingly.

Dated: January *17*, 2023
     New York, New York

                          SO ORDERED.

                          *George B. Daniels*
                          GEORGE B. DANIELS
                          UNITED STATES DISTRICT JUDGE